**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

PAUL STEPHANSKI,

Plaintiff,

v.

9:18-CV-0076<br>(BKS/CFH)

RANDY ALLEN, Sergeant, Cape Vincent
Correctional Facility; THOMAS STACKLE,
Correctional Officer, Cape Vincent Correctional
Facility; and BRANDON PAYNE, Correctional
Officer, Cape Vincent Correctional Facility,

Defendants.

---

**APPEARANCES:**                    **OF COUNSEL:**

PAUL STEPHANSKI
99-B-2439
Plaintiff pro se
Marcy Correctional Facility
P.O. Box 3600
Marcy, New York 13403

HON. LETITIA JAMES                    AIMEE COWAN, ESQ.
Attorney General for the             Assistant Attorney General
State of New York
Attorney for Defendants
300 South State Street, Suite 300
Syracuse, New York 13202

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

<strong>REPORT-RECOMMENDATION AND ORDER</strong>[1]

Plaintiff pro se Paul Stephanski ("Stephanski"), an inmate who was, at all relevant times,

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. §
636(b) and N.D.N.Y.L.R. 72.3(c).

1

in the custody of the New York Department of Corrections and Community Supervision

("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 against Defendants Sergeant

Randy Allen ("Allen") and Correctional Officers Thomas Stackle ("Stackle") and Brandon

Payne ("Payne") for alleged violations of his rights under the Eighth Amendment.  Dkt. No. 1

("Compl.").  Presently before the Court is Defendants' motion for summary judgment.  Dkt.

No. 39.  Stephanski opposed the motion, and Defendants submitted a reply.  Dkt. Nos. 44,

45.  For the following reasons, it is recommended that Defendants' motion for summary

judgment be denied.

# I. BACKGROUND

## A. FACTS[2]

In support of their motion, Defendants filed a Statement of Material Facts.[3]  Dkt. No. 39-

---

[2] The parties provided exhibits with their submissions, without objection or challenges to the authenticity of any of the opposing parties' documents.  Therefore, to the extent that the "facts" asserted by the parties are supported by the record, the undersigned will consider the facts and relevant exhibits or documents in the context of the within motion.  See U.S. v. Painting known as Hannibal, No. 07-CV-1511, 2010 WL 2102484, at *1, n. 2 (S.D.N.Y.  May 18, 2010) (citing Daniel v. UnumProvident Corp., 261 F. App'x 316, 319 (2d Cir. 2008) (summary order) ("[A] party is not required to authenticate documents on a summary judgment motion where, as here, authenticity is not challenged by the other party)).  In light of the procedural posture of the case, the recitation of facts is derived from the record now before the Court, with all inferences drawn and ambiguities resolved in non-moving party's favor.  Terry v. Ashcroft, 336 F.3d 128, 137 (2d Cir. 2003).

[3] Local Rule 7.1(a)(3) states:

Summary Judgment Motions

Any motion for summary judgment shall contain a Statement of Material Facts.  The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits.

The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The non-movant's response may also set forth any additional material facts

9.  The facts are reviewed in the light most favorable to Stephanski as the non-moving party.

See subsection II.A.1 infra.

### 1.  Use of Force Incident

On September 30, 2015, a use of force incident involving Stephanski and Defendants

occurred at Cape Vincent Correctional Facility ("Cape Vincent C.F.").  Compl. at 5-6.[4]  At

approximately 5:30 P.M., Stephanski was smoking a cigarette in his cell, C29, in the Special

Housing Unit ("SHU").  Dkt. No. 39-2 at 26-27.  Payne and Stackle came to Stephanski's cell

and directed him to put his hands out of the hatch to be handcuffed.[5]  Id. at 29.  Stephanski

complied, and Defendants handcuffed him with his arms behind his back.  Id. at 30-31, 40.

One of the officers told Stephanski to walk to the center of the cell.  Id. at 34.  Stephanski

complied, and Payne and Stackle "rushed in."  Dkt. No. 39-2 at 34.  Stackle grabbed

Stephanski and pushed him to the corner of the room while Payne searched the cell.  Id.

Stackle punched Stephanski twice in the ribcage, and Payne punched him six to eight times

in the back.  Id. at 34-41.  Defendants forcibly removed Stephanski from his cell.  Id. at 39.

Payne and Stackle escorted Stephanski to the strip frisk room where they were met by

Allen. Dkt. No. 39-2 at 41.  Allen directed Stephanski to lie on the floor of the room and then

punched him eight times in the back of his right leg while Payne twisted his right ankle and

---

that the non-movant contends are in dispute. Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.

N.D.N.Y. L.R. 7.1(a)(3).

[4] The Court's citation to page numbers in materials filed on the docket refer to the pagination generated by CM/ECF located at the header of each page.

[5] Stephanski had not met Payne or Stackle before the September 30, 2015 incident.  Dkt. No. 39-2 at 32-33.

Stackle "mush[ed] [his] face into the floor." Id. at 43-46. After the incident, Stephanski was

confined to the SHU and remained on "special watch" for eleven days. Dkt. No. 39-8 at 4.

On November 6, 2015, Stephanski was transferred to Southport Correctional Facility

("Southport C.F.").[6] Dkt. No. 39-2 at 62-63; Dkt. No. 39-4 at 7.

## 2. Grievances

Stephanski testified that between October 7, 2015 and October 9, 2015, he attempted

to file two grievances while confined in Cape Vincent C.F. SHU Cell A-1-1.[7] Dkt. No. 39-3 at

14-15. Stephanski claims that he handed the grievances to an officer who collected mail and

that he observed the officer put the mail in a locked box. Id. Stephanski alleges that the

grievances, "never got to [the Inmate Grievance Committee]." Dkt. No. 39-2 at 60-62.

Stephanski did not receive a response to his grievances. Id. at 62.

After Stephanski arrived at Southport C.F., he wrote a letter to the Cape Vincent

Grievance Committee inquiring about the status of his grievance(s) related to the September

2015 incident.[8] Dkt. No. 39-2 at 61-62; Dkt. No. 39-8 at 11. The letter reads, "[w]hen I was

at your facility I wrote a grievance on a assault that took place in your box- against C.O.

Stackle, C.O. Payne and Sgt. Allen - what is the status on that grievance - please respond."

Id.

On November 27, 2015, Stephanski submitted a written grievance to the Inmate

---

[6] Stephanski was confined at Cape Vincent C.F. from March 2015 until November 2015. Dkt. No. 39-4 at 7.

[7] Defendants dispute this contention.

[8] The letter, attached as an exhibit to Defendants' motion, is undated. Dkt. No. 39-8 at 11.

Grievance Resolution Committee ("IGRC") at Southport C.F. related to the September 2015 incident. Dkt. No. 39-2 at 64-65; Dkt. No. 39-6 at ¶ 11. In the grievance, Stephanski described the use of force incident and claimed, "I also filed a grievance got no response - I also wrote and reported it to IG in Albany - still haven't heard anything so I now file this at Southport C.F. due to mitigating circumstances." Dkt. No. 39-8 at 5-6. Stephanski also alleged that his grievances and letters were "tampered with[.]"[9] Id.

On November 30, 2015, Tami Hartz ("Hartz"), the Inmate Grievance Program ("IGP") Supervisor at Cape Vincent C.F., responded to Stephanski's inquiry. The response states, "This is in response to your note received on 11/30/15. A review of the IGRC log reveals there is no record of a grievance from you in 2015." Dkt. No. 39-2 at 61-62; Dkt. No. 39-8 at 10. On November 30, 2015, the IGP Supervisor denied the grievance as "untimely."[10] Dkt. No. 39-2 at 64; Dkt. No. 39-6 at ¶ 13.

On December 1, 2015, Stephanski wrote a letter to "H. Martin," the IGP Supervisor at Southport C.F., "returning the grievance" because it "need[ed] a number." Dkt. No. 39-2 at 64; Dkt. No. 39-8 at 4. Stephanski indicated, "I do not know if Cape Vincent Correctional Facility filed my original complaint[.]" Dkt. No. 39-8 at 4. Stephanski noted, "this needs to be filed and given a number - your response [that it] is untimely - that's fine - please give it a number so it's on file." Id. Stephanski argued that "mitigating circumstances" excused the late filing. Id.

On December 2, 2015, the IGRC received and filed the grievance as SPT-61355-15.

---

[9] Stephanski proffers a copy of the grievance filed at Southport C.F. Dkt. No. 44-5 at 6-7. Defendants also provided a copy of the grievance. Dkt. No. 39-8 at 5-6.

[10] The record does not contain a copy of this decision.

Dkt. No. 39-6 at ¶ 15; Dkt. No. 39-8 at 2.

On December 4, 2015, DOCCS issued a document entitled "Inmate Grievance Program - Investigation", denying Grievance No. SPT 61355-15.[11]  Dkt. No. 39-8 at 2, 3, 9.  Under the heading "Investigative Report," the decision states: "Denied: According to Cape Vincent C.F. no grievance was filed concerning this issue.  Grievant was informed by mail dated 11/30/15. The incident is untimely and will not be investigated."  Dkt. No. 39-8 at 9.  The Investigative Report also contains the following notation:

> 1/27 - IGPS Hartz
>     No F/U with IGPS prior to 11/6 T/F to SPT.

Dkt. No. 39-8 at 9.

On December 9, 2015, Stephanski appealed the IGRC's decision to the Superintendent. Dkt. No. 39-8 at 3.  On December 10, 2015, the Superintendent denied the grievance.  Id. at 2, 7.  The response reads:

> Upon full hearing of the facts and circumstances in the instant case, the action requested herein is denied.  According to our investigation Cape Vincent CF has advised that no grievance concerning this issue was ever received and filed.  Grievant was informed by mail dated 11/30/15 that the issues in his complaint are now beyond the timeframes established in Directive 4040.  Therefore, any issues raised in grievant's complaint which exceed the time frames for filing a grievance will not be addressed and should not be the subject of another grievance.

Dkt. No. 39-8 at 7.

On December 14, 2015, Stephanski appealed the decision to the Central Office Review Committee ("CORC") arguing that "[d]ue to Cape Vincent not filing grievance - this should be

---

[11] The signature of the "Report Writer" is illegible.  Dkt. No. 39-8 at 9.  Under the heading, "Name of Person(s)/Title and/or Department Involved" is the name "T. Hartz IGPS".  Id.

accepted and investigated fully." Dkt. No. 39-8 at 2, 3, 7.

On February 17, 2016, CORC issued a decision and "unanimously denied [the appeal] as without merit." Dkt. No. 39-8 at 1; Dkt. No. 39-6 at ¶ 16. CORC reasoned that Stephanski could not avail himself of Section 701.6(g)(1)(i)(a)[12] because "an exception to the time limit may not be granted more than 45 days after an alleged occurrence." Dkt. No. 39-8 at 1; Dkt. No. 44-5 at 9.

## B. Procedural History

On January 18, 2018, the Court received the Complaint in the within action. Dkt. No. 1. Upon review of the Complaint, the Court directed Defendants to respond to the Eighth Amendment claim. Dkt. No. 9. On June 1, 2018, Defendants filed an Answer to the Complaint.[13] Dkt. No. 18. On November 21 and December 7, 2018, Stephanski appeared at depositions.[14] Dkt. No. 39-2 and 39-3. On June 26, 2019, Defendants filed the within motion pursuant to Fed. R. Civ. P. 56 seeking judgment as a matter of law with respect to

---

[12]  § 701.6(g)(i)(i)(a) provides:

Time limit exceptions and extensions.

(1) Time limit for filing a grievance or appeal:

(i) An inmate may request an exception to the time limit for filing a grievance, or for filing an appeal to the superintendent or to CORC. Such a request shall be in writing and shall be submitted to the grievance clerk with the grievance or appeal the inmate wishes to file.

(a) The IGP supervisor may grant an exception to the time limit for filing a grievance based on mitigating circumstances (e.g., timely attempts to resolve a complaint informally by the inmate, etc.). An exception to the time limit may not be granted if the request was made more than 45 days after an alleged occurrence.

N.Y.C.R.R. tit. 7, § 701.6

[13]  In the Answer, Defendants pleaded, inter alia, the affirmative defense that Stephanski failed to exhaust his administrative remedies. Dkt. No. 18 at ¶ 19.

[14]  The November 2018 deposition was continued due to time constraints. Dkt. No. 39-3 at 5.

7

Stephanski's Eighth Amendment claim.  Dkt. No. 39.

## II.  DISCUSSION

Stephanski contends that Defendants used excessive force during the September 2015 incident in violation of the Eighth Amendment.  See generally Compl.  Defendants move for summary judgment on Stephanski's Eighth Amendment claim arguing that he failed to exhaust his administrative remedies.  See generally Dkt. No. 39.

### A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact, it was supported by affidavits or other suitable evidence, and the moving party is entitled to judgment as a matter of law.  The moving party bears the burden of demonstrating the absence of disputed material facts by providing the court with portions of pleadings, depositions, and affidavits which support the motion.  FED R. CIV. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 317, 248 (1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party.  Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing a genuine issue for trial. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  For a court to grant a motion for summary judgment, it must be apparent that no rational finder of fact could find in favor of the non-moving party.  Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d

Cir. 1988).

Where, as here, a party seeks judgment against a <u>pro</u> <u>se</u> litigant, a court must afford the

non-movant special solicitude.  <u>See</u> <u>Triestman v. Federal Bureau of Prisons</u>, 470 F.3d 471,

477 (2d Cir. 2006).  As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant
> is entitled to "special solicitude," . . . that a pro se litigant's
> submissions must be construed "liberally,". . . and that such
> submissions must be read to raise the strongest arguments that
> they "suggest," . . . .  At the same time, our cases have also
> indicated that we cannot read into pro se submissions claims that
> are not "consistent" with the pro se litigant's allegations, . . . or
> arguments that the submissions themselves do not "suggest," . .
> . that we should not "excuse frivolous or vexatious filings by pro se
> litigants," . . . and that pro se status "does not exempt a party from
> compliance with relevant rules of procedural and substantive law.

<u>Id.</u> (citations and footnote omitted); <u>see also</u> <u>Sealed Plaintiff v. Sealed Defendant</u>, 537 F.3d

185, 191-92 (2d Cir. 2008).


## B. Exhaustion[15]

Defendants contend that the motion for summary judgment must be granted because

Stephanski failed to exhaust his administrative remedies through available grievance

procedures.  <u>See</u> Dkt. No. 39.  The PLRA requires that a prisoner exhaust any administrative

remedies available to him or her before bringing an action for claims arising out of his or her

incarceration.  <u>Porter v. Nussle</u>, 534 U.S. 516, 524 (2002); <u>see also</u> <u>Woodford v. Ngo</u>, 548

U.S. 81, 82 (2006).  The exhaustion requirement applies "to all inmate suits about prison life,

whether they involve general circumstances or particular episodes, and whether they allege

---

[15] Unpublished decisions cited herein have been provided to plaintiff <u>pro</u> <u>se</u>.

excessive force or some other wrong." <u>Porter</u>, 534 U.S. at 532.  Further, the exhaustion requirement applies even where the prisoner seeks relief not available in the administrative grievance process, such as monetary damages.  <u>Id.</u> at 524.  To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he or she is incarcerated.  <u>Jones v. Bock</u>, 549 U.S. 199, 218 (2007) (internal citation omitted).

Although the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply."  <u>Ruggiero v. County of Orange</u>, 467 F.3d 170, 175 (2d Cir. 2006) (citation omitted).  The Supreme Court of the United States has held that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement."  <u>Ross v. Blake</u>, __U.S.__, 136 S. Ct. 1850, 1862 (2016).  As such, the special circumstances exception previously promulgated by the Second Circuit in <u>Hemphill v. New York</u>, 380 F.3d 680, 686 (2d Cir. 2004), is no longer consistent with the statutory requirements of the PLRA.  <u>Williams v. Priatno</u>, 829 F.3d 118, 123 (2d Cir. 2016).[16]

Although <u>Ross</u> eliminates the "special circumstances" exception, courts must still consider the PLRA's "textual exception to mandatory exhaustion."  <u>Ross</u>, 136 S. Ct. at 1858. Under this exception, courts must determine whether administrative remedies were "available" to a prisoner.  <u>Id.</u>  The Supreme Court identified three circumstances where administrative remedies may be unavailable to a prisoner.  First, "an administrative

---

[16]  In <u>Williams v. Priatno</u>, the Second Circuit debated <u>Ross</u>' effect on <u>Hemphill</u>'s estoppel exception. <u>See</u> <u>Williams</u>, 829 F.3d at 123.  The <u>Williams</u> Court stated that "<u>Ross</u> largely supplants our <u>Hemphill</u> inquiry by framing the exception issue entirely within the context of whether administrative remedies were actually available to the aggrieved inmate." <u>Id.</u> (citing <u>Ross</u>, 136 S.Ct. at 1858-59).

procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. at 1859 (citing Booth v. Churner, 532 U.S. 731, 736, 738 (2001)). "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Lastly, administrative remedies are unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

Here, there is no dispute that at all relevant times, DOCCS had in place a three-step inmate grievance program. N.Y.C.R.R. tit. 7, § 701.5 (2015). First, the inmate must file a complaint with an inmate grievance program ("IGP") clerk within twenty-one days of the alleged action. Id. at § 701.5(a)(1). An IGP representative has sixteen calendar days to informally resolve the issue. Id. at § 701.5(b)(1). If no informal resolution occurs, the full IGP committee must hold a hearing within sixteen days of receipt of the grievance and must issue a written decision within two working days after the conclusion of the hearing. Id. §§ 701.5(b)(2)(i)-(ii). If the determination is unfavorable to the inmate, the inmate may appeal the IGRC's determination to the facility superintendent within seven calendar days of receipt of the determination. Id. § 701.5(c)(1). If the superintendent's determination is unfavorable to the inmate, the inmate may appeal to the Central Office Review Committee ("CORC") within seven days after receipt of the superintendent's determination. Id. §§ 701.5(d)(i)-(ii). CORC must "review each appeal, render a decision on the grievance, and transmit its decision to the facility, with reasons stated, for the [inmate], the grievance clerk, the superintendent, and any direct parties within thirty (30) calendar days from the time the appeal was received." Id. § 701.5(d)(3)(ii).

11

If it is found that the plaintiff has not exhausted all available administrative remedies, his or her case generally should be dismissed without prejudice.  Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc., 560 F.3d 118, 124 (2d Cir. 2009) (citation omitted).  Since "[f]ailure to exhaust administrative remedies is often a temporary, curable procedural flaw," and "[i]f the time permitted for pursuing administrative remedies has not expired, a prisoner . . . can cure the defect by exhausting [the available remedies] and reinstating his suit." Berry v. Kerik, 366 F.3d 85, 87 (2d Cir. 2003), amended 2004 (quoting Snider v. Melindez, 199 F.3d 108, 111-12 (2d Cir. 1999)).

Where the grievance involves allegations of employee excessive force, as alleged by Stephanski, there is an expedited administrative process.  N.Y.C.R.R. tit. 7, § 701.8; see Torres v. Carry, 691 F. Supp. 2d 366, 369-70 (S.D.N.Y. 2009).  Complaints and grievances of this nature are forwarded directly to the superintendent of the facility.  Bell v. Napoli, No. 9:17-CV-850 (ATB), 2018 WL 6506072, at *2 (N.D.N.Y. Dec. 11, 2018).  In such cases the superintendent is required to order an investigation and render a decision within twenty-five (25) days.  Id. § 701(a)-(f).  If the superintendent fails to respond within the twenty-five (25) time limit the inmate may appeal his grievance to the CORC.  Disagreement with the superintendent's decision in the expedited review process also requires an appeal to the CORC.  See N.Y.C.R.R., title 7,§ 701.8-(g)-(h); see also Espinal v. Goord, 588 F.3d 119, 125 (2d Cir. 2009) (explaining IGP and the expedited procedure for harassment claims and its appeal mechanism through the CORC).  The Second Circuit has long recognized this procedure as an "available remedy" for purposes of the PLRA.  See Hall v. County of Saratoga, No. 1:10-CV-1120 (NAM/CFH), 2013 WL 838284, at *1-2 (N.D.N.Y. Mar. 6, 2013).

**1.  Did Plaintiff Exhaust his Administrative Remedies?**

The Court will address whether there is any genuine dispute that Stephanski failed to exhaust his administrative remedies.  Stephanski does not dispute that a grievance process existed at Cape Vincent C.F. and that he was aware of the process.  Dkt. No. 39-2 at 58-59. Stephanski sets forth two arguments to establish that he exhausted his administrative remedies.  First, Stephanski alleges that he verbally complained about the incident and wrote letters to the Inspector General.  Id. at 55-58; Dkt. No. 39-8 at 6.  Second, Stephanski alleges that he exhausted his administrative remedies because he filed a grievance at Southport C.F. and appealed the unfavorable determination to CORC.  Dkt. No. 44 at 2-3; Dkt. No. 44-4 at 6.

**a.  Verbal Complaints and Letters**

Stephanski testified that he complained to Captain Hanson and sent letters to the Inspector General regarding the September 2015 incident.[17]  Dkt. No. 39-2 at 55-58.  Insofar as Stephanski argues that he sufficiently exhausted because he verbally complained to Hansen, "[t]he law is well-settled that informal means of communicating and pursuing a grievance, even with senior prison officials, are not sufficient under the PLRA."  Timmons v. Schriro, No. 14-CV-6606, 2015 WL 3901637, at *3 (S.D.N.Y. June 23, 2015).  Similarly, assuming as true that Stephanski wrote to the Inspector General, a plaintiff's letters to prison officials or other officials outside of the grievance chain of command are insufficient to properly exhaust administrative remedies.  See Geer v. Chapman, No. 9:15-CV-952 (GLS/ATB), 2016 WL 6091699, at *5 (N.D.N.Y. Sept. 26, 2016), Report-Recommendation

---

[17]  Stephanski has not proffered evidence of such letters.

13

adopted, 2016 WL 6090874 (N.D.N.Y. Oct. 18, 2016) (citing Macias v. Zenk, 495 F.3d 37, 44-45 (2d Cir. 2007) ("It is well-settled that writing letters to prison officials, or other officials, is insufficient to properly exhaust administrative remedies.")).  Thus, these actions are insufficient to constitute proper exhaustion.

### b.  Southport C.F. Grievance

In support of the motion for summary judgment, Defendants submitted the Declaration of Tami Hartz.  Dkt. No. 39-5.  Hartz reviewed Cape Vincent C.F. records and found that Stephanski submitted no grievances related to allegations of excessive force on or around September 30, 2015.  Id. at ¶ 8.  Defendants also provided the Declaration of Rachael Seguin ("Seguin"), Assistant Director of DOCCS' Inmate Grievance Program.  Dkt. No. 39-6. Seguin avers that "DOCCS [ ] provides for an expedited procedure for the review of grievances alleging harassment or misconduct by DOCCS employees."  Id. at ¶ 6.  The procedure allows an inmate to directly forward the grievance to the Superintendent of the facility however, the inmate must still appeal the determination to CORC.  Id.  Seguin reviewed CORC records for determinations on any Stephanski grievance appeals and found that there were none filed at Cape Vincent C.F. with respect to the September 2015 incident. Id. at ¶ 10.

According to Seguin, "[i]t appears that while at Southport Correctional Facility, Plaintiff submitted a complaint to the IGRC dated November 27, 2015 related to the September 30, 2015 incident at Cape Vincent."  Dkt. No. 39-6 at ¶ 11.  The grievance was assigned a number and denied as untimely.  Id. at ¶ 13, 15, 16; see Part I(A)(2).  Stephanski's appeals to the Superintendent and to CORC were denied.  Stephanski's request for an exception to the time limit for filing a grievance based upon "mitigating circumstances" was also denied.

Dkt. No. 39-8 at 1.

An inmate must submit a grievance within twenty-one calendar days of the alleged occurrence.  See N.Y.C.R.R. tit. 7, § 701.5(a).  "An inmate may request an exception to the time limit for filing a grievance, . . . and the IGP supervisor may grant an exception to the time limit for filing a grievance based on mitigating circumstances[.]"  Id. at § 701.6(g).  "An exception to the time limit may not be granted if the request was made more than 45 days after an alleged occurrence."  Id.  "A grievance which is denied as untimely does not satisfy the PLRA's exhaustion requirements."  Burrell v. Zurek, No. 9:17-CV-0906 (LEK/TWD), 2019 WL 5197519, at *15 (N.D.N.Y. June 21, 2019).  Further, "[f]iling an untimely grievance without subsequently obtaining a finding of mitigating circumstances is insufficient to exhaust one's available administrative remedies."  Adams v. O'Hara, No. 9:16-CV-0527 (GTS/ATB), 2019 WL 652409, at *7 (N.D.N.Y. Feb. 15, 2019) (finding that the plaintiff failed to exhaust his administrative remedies because his grievance was rejected as untimely, and there was no subsequent finding of mitigating circumstances to excuse that untimeliness).  "An inmate has not exhausted his administrative remedies when he has requested permission to file an untimely appeal and been denied by CORC due to an unpersuasive showing of mitigating circumstances."  Galberth v. Durkin, No. 9:14-CV-115 (BKS/ATB), 2016 WL 11480153, at *7 (N.D.N.Y. Apr. 21, 2016) (citations omitted).

Here, Stephanski's grievance filed at Southport C.F. was denied as untimely and outside the time period in which to seek an extension.  Accordingly, Stephanski failed to exhaust his Eighth Amendment claim.  See LionKingzulu v. Jayne, 714 F. App'x 80, 82 (2d Cir. 2018) (summary order) (citing § 701.6(g)(1)(i)(a)); see also Armand v. Mosko, No. 13-CV-5, 2019 WL 2374948, at *4 (W.D.N.Y. Apr. 9, 2019) ("Plaintiff's belated attempt to file a grievance

15

from Southport plainly does not satisfy the exhaustion requirement because the PLRA requires proper exhaustion of administrative remedies.").  Defendants have met their burden of demonstrating that a grievance procedure existed, and that Stephanski failed to exhaust administrative remedies related to the 2015 use of force incident.  As a result, the Court must assess whether administrative remedies were available to Stephanski.

### 2.  Availability of Administrative Remedies

Administrative remedies may be unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Ross, 136 S. Ct. at 1860.  However, it is well-settled that where an inmate does not receive a response to a grievance, the inmate must appeal to the next level of review notwithstanding the lack of response at the first level of review. See Khudan v. Lee, No. 12-CV-8147, 2015 WL 5544316, at *5 (S.D.N.Y. Sept. 17, 2015) (dismissing the plaintiff's complaint because he failed to appeal to the next level of review after receive no response on his filed grievance).  Thus, if an inmate suspects that his or her grievances were discarded, he or she must appeal the grievance despite the lack of response at the first step of review.  Chiarappa v. Meyers, No. 09-CV-607, 2013 WL 6328478, at *5 ( W.D.N.Y. Dec. 5, 2013) ("[E]ven if plaintiff attempted unsuccessfully to file a grievance in a timely manner, the lack of a response does not relieve him of the requirement to timely appeal the grievance through all three steps of the grievance process.").

However, recent decisions by courts in the Second Circuit have addressed the availability of administrative remedies when an inmate's grievance is both unfiled and unanswered.  In

Williams v. Priatno, 829 F.3d 118 (2d Cir. 2016), the plaintiff, like Stephanski, alleged that he attempted to file a grievance while he was in the SHU.  Id.  The plaintiff contended that he gave his grievance to a correction officer to be filed, and that the correction officer must have disposed of the grievance because the facility had no record of the grievance.  Id.  The Williams Court accepted the plaintiff's allegation that the correction officer failed to file the grievance, and held that "[u]nder that circumstance, the regulations do not adequately outline the process to appeal or otherwise exhaust administrative remedies.  On their face, the regulations only contemplate appeals of grievances that were actually filed."  Id.  Indeed, the Second Circuit notes in detail the confusing nature of the timelines set forth in the DOCCS' regulations governing the grievance procedure.  See id. at 124-25.  Ultimately, the Second Circuit held that the DOCCS "regulations plainly do not describe a mechanism for appealing a grievance that was never filed."  Id. at 126.  Following Williams, this Court has denied a defendant's motion for summary judgment when faced with an unanswered and unfiled grievance drafted in SHU.  See, e.g., Juarbe v. Carnegie, No. 9:15-CV-01485 (MAD/DEP), 2016 WL 6901277, at *1, 4 (N.D.N.Y. Nov. 23, 2016).

In this case, Hartz avers that inmates in the Cape Vincent C.F. SHU were provided with inmate grievance complaint forms and envelopes upon request.  Dkt. No. 39-5 at ¶ 4.  Hartz further declared that an IGP staff member was required to make weekly rounds to SHU cells to collect grievances.  Id. at ¶ 5.  Stephanski disputes this account by contending that he never saw a grievance staff member in the SHU, and arguing that inmates are not permitted "to give a civilian staff member any type of envelope, it is against the code of ethics."  Dkt. No. 44-3 at ¶ 6.  Stephanski testified that SHU inmates handed their grievance to a correction officer and that the officer "drop[ped] it in the box."  Dkt. No. 39-2 at 59.  The next

17

morning, the mailbox is unlocked and opened by the officer.  Id.

Stephanski alleges that grievance procedures were not available to him because he attempted to file two grievances while confined in the SHU at Cape Vincent C.F., and the grievances were intercepted "due to the seriousness of the incident."  Dkt. No. 39-2 at 60-61; Dkt. No. 39-3 at 13-15; Dkt No. 44-1.  Stephanski testified that, while confined in the Cape Vincent C.F. SHU cell A-1-1, he gave two grievances to the officer who collected mail.[18]  Dkt. No. 39-3 at 14-15.  Stephanski witnessed the officer put the grievances in a locked box.  Id. Stephanski suspects that the grievances were intercepted and alleges that the "C.O.s" have the only key to the box and that he "assumes" that Stackle or Payne told the officer, "[i]f there's any grievances that come through from Stephanski, take them out."  Dkt. No. 39-2 at 60-61; Dkt. No. 39-3 at 14-15.  Stephanski did not receive a response to his grievances.  Dkt. No. 39-3 at 17.

Defendants contend that Stephanski has no direct knowledge or evidence that any defendant or other person interfered with his grievances and his only support for this accusation are his own conclusory allegations.  Dkt. No. 39-10 at 10-12; Dkt. No. 45 at 7. Defendants point out that, "[c]onveniently, Plaintiff does not have any copies of the grievances he alleges that he filed while at Cape Vincent" or copies of letters he wrote to the IGRC.  Dkt. No. 39-10 at 11.  Although Defendants are correct regarding the absence of copies, Stephanski testified during his deposition that he attempted to file the grievances while confined in the SHU and that he did not have carbon paper to make copies.  Dkt. No. 39-2 at 64.  Although Stephanski fails to proffer copies of the grievance(s) he attempted to

---

[18]  This officer is not named as a defendant herein.  Dkt. No. 39-3 at 15.

file at Cape Vincent C.F., his claims are supported by evidence suggesting that he attempted to file a grievance at Cape Vincent C.F. including: (1) Stephanski's deposition testimony; (2) Stephanski's letter to the Cape Vincent Grievance Committee; (3) Stephanski's letter to Mrs. Martin; (4) grievance SPT 61355-15; and (5) Stephanski's Appeal Statement referring the Superintendent's decision to CORC for review.[19]  Dkt. No. 39-8 at 4, 5-7, 11; see Reid v. Marzano, 9:15-CV-761 (MAD/CFH), 2017 WL 1040420, at *3 (N.D.N.Y. Mar. 17, 2017) ("[I]t is unclear what evidence Defendants expect Plaintiff to produce of his grievances that were allegedly discarded by corrections officers[,]" while "[the] [p]laintiff would have ideally made a photocopy of his grievances for his own personal file, inmates in the SHU do not have regular access to the law library[.]").

    Stephanski's allegations of mail tampering are further supported by the fact that the CORC has no record of any grievance filed while he was incarcerated at Cape Vincent C.F. Dkt. No. 39-6 at ¶ 8, 10; Dkt. No. 39-7 at 5;  see Ortiz v. Annucci, No. 17-CV-3620, 2019 WL 1438006, at *9 (S.D.N.Y. Mar. 29, 2019) ("The absence of any official records of Plaintiff's grievance or appeal comports with Plaintiff's assertion that the officer to whom he handed his grievance failed to file it."); Zulu v. Barnhart, No. 9:16-CV-1408 (MAD/DEP), 2019 WL 2997226, at *13 (N.D.N.Y. Apr. 22, 2019), report-recommendation adopted, 2019 WL 2150628 (N.D.N.Y. May 17, 2019) ("The absence of any official records of plaintiff's initial attempts to grieve the incident comports with plaintiff's assertion that once he handed a grievance through the feed-up hatch in the SHU, it was out of his possession and it was not filed.").

---

[19]  Defendants do not contest the admissibility of the documents Stephanski produced and have annexed copies of the same documents to their motion papers.

Upon review of the record, the Court finds sufficient evidentiary support to withstand Defendants' motion for summary judgment for Stephanski's claim that he attempted to file a grievance at Cape Vincent C.F.  See Burroughs v. Petrone, No. 9:15-CV-818 (DNH/ATB), 2018 WL 7291419, at *5 (N.D.N.Y. Dec. 27, 2018), Report-Recommendation adopted, 2019 WL 587090 (N.D.N.Y. Feb. 13, 2019) (finding that documentary evidence, even though it is evidence that the plaintiff "apparently had no recollection of during his deposition," coupled with the inmate's "necessary reliance on SHU officers to deliver his grievance," are some of "several factors" that the Court "may consider when evaluating the question of exhaustion" on a motion for summary judgment.) (citation omitted).

Defendants attempt to distinguish this case from Williams and cite several cases in support of their position that Stephanski's failure to submit evidence supporting his claim that his grievances were intercepted fails to create a genuine issue of material fact regarding unavailability.  See, e.g., Smith v. Dodge, No. 9:18-CV-1066 (MAD/TWD), 2019 WL 2250552 (N.D.N.Y. May 24, 2019) (granting summary judgment where the plaintiff failed to respond to the defendant's statement of material facts or offer any evidence detailing where he mailed his grievance, when he mailed it, who he gave it to, or what, if anything, prevented him from timely filing the grievance); Sankara v. Montgomery, No. 9:16-CV-885 (FJS/TWD), 2018 WL 4610686 (N.D.N.Y. June 25, 2018) (granting summary judgment where the plaintiff failed to respond to the defendants' statement of material facts and "submitted no documentary evidence whatsover that supports his conclusory assertions that he submitted grievances [. . .] or demonstrates any follow up on his part when he allegedly received no response."); Grayson v. Courtney, No. 9:16-CV-1118 (GLS/ATB), 2018 WL 6933296 (N.D.N.Y. Dec. 3, 2018) (granting summary judgment and finding no issue of material fact as to exhaustion

because the only evidence on record was the plaintiff's deposition testimony regarding his efforts to file grievances); Khudan, 2016 WL 4735364 (finding no issue of material fact as to whether the plaintiff appealed to CORC as the plaintiff's affidavit made "no mention of submitting an appeal to the CORC," and at his deposition the plaintiff "asserted that he sent an appeal of his grievance to 'Albany,'" but "failed to specify where in Albany he sent his grievance and fails to provide any other details, including the approximate date he submitted his appeal and whether he properly used a 'notice of decision to appeal' form."); Nelson v. Artus, No. 14-CV-6634, 2016 WL 1023324 (W.D.N.Y. Mar. 8, 2016) (finding no material issue of fact on exhaustion where the "[p]laintiff had the ability to file an appeal regarding his grievance in this case, but chose not to do so. There is no allegation – much less any evidence – that [the p]laintiff was in any way prevented from accessing the grievance process as it relates to this incident, and there are no special circumstances alleged or proven that would justify the [p]laintiff[']s failure to comply with DOCCS' grievance procedures."). However, there are discernable differences between the facts in those cases, and the facts at hand. Here, Stephanski properly and timely responded to Defendants' Motion for Summary Judgment and Statement of Material Facts, testified under oath (on two occasions) regarding his efforts to file grievances at Cape Vincent C.F., and submitted some corroborating documentary evidence.

Defendants also argue that, even assuming Stephanski attempted to file grievances at Cape Vincent C.F., he has not established that the grievance process was unavailable because he made no effort to follow up on the status of the grievances until "long after the 21-day deadline and long after he was transferred to Southport C.F." and "nearly 60 days after the alleged incident occurred." Dkt. No. 39-10 at 13; Dkt. No. 45 at 6. However, the

21

record contains credible evidence suggesting that, from September 30, 2015 until December 14, 2015, Stephanski made a good-faith effort to exhaust his claims. Stephanski testified that he did not follow up on the status of his grievances while he was in the SHU at Cape Vincent C.F. because he was "out of there pretty quick." Dkt. No. 39-3 at 16. According to DOCCS' records, Stephanski was "referred" to Southport C.F on October 26, 2015, "effective" November 6, 2015. Dkt. No. 39-4 at 7. Upon arriving at Southport C.F., he wrote to the grievance committee at Cape Vincent C.F. Dkt. No. 39-8. On November 27, 2015, before he received a response to that correspondence, Stephanski filed a grievance at Southport C.F. Dkt. No. 39-8 at 5-6. When the grievance was denied without a grievance number, Stephanski re-submitted the grievance. After the grievance was accepted and denied, Stephanski appealed the IGRC decision to the Superintendent, and appealed the Superintendent's decision to CORC. Accordingly, the Court finds that Stephanski has credibly documented his efforts to file grievances and to follow up in a timely manner. See Zulu, 2019 WL 2997226, at *13 (excusing the plaintiff from the exhaustion requirement due to his "persistent efforts to follow up, re-file, and appeal the grievances").

Defendants next argue that, even assuming Stephanski's grievance was intercepted, the motion must be granted because he failed to complete "steps two and three" of the grievance process. Dkt. No. 45 at 10. Stephanski plainly knew how to file a grievance, and proves as much where he states that he twice attempted to give his grievance regarding the September 30, 2015 incident to a correction officer while he was in the SHU. Dkt. No. 39-3 at 14-15. However, it is clear to the Court from Stephanski's deposition testimony that there is a genuine issue of material fact whether knew how to proceed when he never received a response. During his deposition, Stephanski testified:

> Q.    So although you never heard back about those two
>       Cape Vincent grievances did you ever appeal those
>       grievances?
>
> A.    Well you can't appeal if you don't get the grievance
>       back.

Dkt. No. 39-3 at 17.

Plaintiff's confusion about the process is supported by his follow up letter to the Cape Vincent Grievance Committee and Hartz's brief response. Dkt. No. 39-8 at 10-11. Hartz's response reads, "[t]his is in response to your note received on 11/30/15. A review of the IGRC log reveals there is no record of a grievance from you in 2015." Id. at 10. Hartz did not provide any information about how to pursue administrative remedies when a grievance is unfiled and unanswered. See Woodward v. Lytle, No. 9:16-CV-1174 (NAM/DEP), 2018 WL 4643036, at *4 (N.D.N.Y. Sept. 27, 2018) (finding that the grievance process was unavailable as the process to appeal an unanswered grievance is prohibitively opaque and noting that the defendants, in response to an inquiry by the plaintiff, failed to explain that the plaintiff "had to appeal the non-response to his alleged unfiled grievance to the CORC," but was told that Directive 4040 "makes no provision for an inmate to refer grievances directly to the Central Office, and that specific grievance concerns should be directed to the IGP Supervisor for the most expeditions means of resolution."). Moreover, Stephanski did not receive Hartz's memorandum until November 30, 2015, after the twenty-one day deadline and the forty-five day limit on requesting an extension of time to file a grievance based on mitigating circumstances. See Hamlet v. Stotler, No. 9:17-CV-0939 (GLS/TWD), 2018 WL 2729263, at *8 (N.D.N.Y. Apr. 27, 2018) (reasoning that the IGP Supervisor's response to the plaintiff's inquiry that no grievances had been filed, did not render Williams inapplicable when

it was issued beyond the twenty-one day deadline and forty-five day limit on requesting an extension based upon mitigating circumstances).

Defendants fail to set forth evidence showing that Stephanski received information about how to pursue administrative remedies when a grievance is unfiled and unanswered.  See, e.g., Juarbe, 2016 WL 6901277, at *1 ("In Williams, the Second Circuit held that when a plaintiff's grievance is both unfiled and unanswered, the regulations do not clearly outline the process to appeal or otherwise exhaust administrative remedies, and therefore, the administrative remedies are unavailable under Ross.").  Consequently, this Court reaches the same conclusion as the Second Circuit in Williams.  Viewing the facts in the light most favorable to Stephanski, the record suggests that he submitted grievances while confined in the Cape Vincent C.F. SHU, but the grievances were unfiled and unanswered, creating an issue of material fact as the availability of the grievance process, and, thus, whether administrative remedies were available to him.  See Williams, 829 F.3d at 126 (concluding that "the process to appeal an unfiled and unanswered grievance is prohibitively opaque, such that no inmate could actually make use of it."); Thaxton v. Simmons, No. 9:10-CV-1318 (MAD/RFT), 2013 WL 4806457, at *4 (N.D.N.Y. Sept. 9, 2013) ("[A] question of fact exists as to whether [p]laintiff never filed his initial grievance on April 29, as [d]efendants claim, or that, as [p]laintiff claims, he filed a timely grievance that was lost or tampered with by [d]efendants. Such credibility assessments are to be resolved by a trier of fact.").  Accordingly, it is recommended that Defendants' motion for summary judgment, insofar as it raises the affirmative defense of nonexhaustion, should be denied.

24

### III.  CONCLUSION

**WHEREFORE**, based on the findings set forth above, it is hereby:

**RECOMMENDED**, that Defendants' motion for summary judgment (Dkt. No. 39) be:

**DENIED**; and it is further

**ORDERED**, that copies of this Report-Recommendation and Order be served on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Services, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

Dated: January 22, 2020
      Albany, New York

Christian F. Hummel
U.S. Magistrate Judge